# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

DSG COMMERCIAL ECO CLEANING
SYSTEMS, INC.,

    Plaintiff,

v.

DHL EXPRESS (USA), INC.,

    Defendant.

Case No. 2:23-cv-02093-MSN-tmp
JURY DEMAND

## ORDER GRANTING MOTION TO DISMISS

Before the Court is Defendant DHL Express (USA), Inc.'s ("Defendant") Motion to Dismiss, filed March 29, 2023. (ECF No. 9.) After receiving an extension of time to respond, Plaintiff DSG Commercial Eco Cleaning Systems, Inc. ("Plaintiff") filed a timely Response in Opposition to Defendant's Motion on May 17, 2023. (ECF No. 12.) Defendant filed a Reply on May 31, 2023. (ECF No. 13.) For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

This case arises out of at least one failed business arrangement. According to the Complaint, Plaintiff is a commercial janitorial company that partnered with an entity by the name of Jan Pro in 2017[1] to provide cleaning services to Jan Pro's clients. (ECF No. 1-1 at PageID 6–7.) Under that agreement ("the Franchise Agreement"), Jan Pro would refer its customers to Plaintiff and Plaintiff would take it from there, scheduling the requested cleaning service and

---

[1] The Complaint states at different times that the Agreement took place in 2016 and 2017. (*See* ECF No. 1-1 at PageID 6, 8.) The Court uses 2017 for consistency.

invoicing the customer upon completion of that service. (*Id.*) Plaintiff states that the Franchise Agreement also prevented Plaintiff from soliciting business outside of the arrangement set forth in that Agreement. (*Id.* at PageID 9.)

In early 2021, Plaintiff agreed to provide cleaning services for Defendant, which it did in both March and October of 2021. (*Id.*) In December, Defendant's new manager ("Mr. Kim") asked Plaintiff for an "in depth COVID cleaning" that was more expansive than the cleanings Plaintiff had previously been doing. (*Id.*) Plaintiff provided a quote for what that service would cost and completed it on December 27, 2021 after Mr. Kim approved the invoice. (*Id.* at PageID 10.) Plaintiff alleges that, after the cleaning had been finished, Defendant decided it was dissatisfied with the quote and contacted Jan Pro to get a discount on Plaintiff's December service, even though Plaintiff does not have to get approval from Jan Pro for its pricing. (*Id.*)

While Defendant was trying to negotiate with Jan Pro, Defendant was allegedly also negotiating directly with Plaintiff, which eventually agreed to let Defendant pay an amount lower than that in the quote and subsequent invoice. (*Id.*) Plaintiff alleges that Jan Pro, through Jason Pierami ("Mr. Pierami"), then told Plaintiff that it would sever the Franchise Agreement with Plaintiff if Defendant sued "them" (it is unclear whether "them" refers to Jan Pro or to Plaintiff). (*Id.* at PageID 11.) On January 24, 2022, Jan Pro allegedly sent DHL a "notice" that Plaintiff and its owner ("Mr. Saulsberry") were being replaced due to their failure to provide services and to an "ad hoc pricing issue." (*Id.*) Plaintiff claims that it was also notified that day that Jan Pro had terminated the Franchise Agreement. (*Id.*)

On December 23, 2022 Plaintiff filed a Complaint against Defendant in the Circuit Court of Shelby County alleging Tortious and Intentional Interference with Business Relations and Prospective Business Relations; Tortious and Intentional Interference with Contract; Defamation;

and Breach of Contract. (ECF No. 1-1.) Defendant removed the matter to this Court on the basis of diversity jurisdiction on February 20, 2023, (ECF No. 1), and filed a Motion to Dismiss on March 29, 2023 (ECF No. 9).

## **STANDARD OF REVIEW**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Using this framework, the court determines whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A complaint need not contain detailed factual allegations; however, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). If a court decides in light of its judicial experience and common sense that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 556.

**DISCUSSION**

**I.     Defamation**

Plaintiff alleges that Defendant is liable for statements it made about Plaintiff and its services. (ECF No. 1-1 at PageID 15.) Defendant argues that this claim is time-barred, that the referenced statements are not defamatory, and that they are nonetheless protected by the common interest privilege. (ECF No. 9 at PageID 36.) Among other arguments, Plaintiff responds that whether statements are defamatory is a question of fact that should be left to a jury. (ECF No. 12 at PageID 111.) The Court finds that Plaintiff's defamation claim must be dismissed because the allegations fail to raise a right to relief above the speculative level.

**A.     Statute of Limitations**

The law of defamation includes both slander (spoken defamation) and libel (written defamation). *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994). In Tennessee, libel has long been viewed as the greater wrong because of "the deliberate malignity displayed by reducing the offensive matter to writing." *Id.* (quoting *Williams v. Karnes*, 23 Tenn. 9, 11 (1843)). As a result, Tennessee law allows plaintiff more time to bring an action for libel than one for slander. *Id.* Specifically, "[a]ctions for slanderous words spoken shall be commenced within six (6) months after the words are uttered," Tenn. Code Ann. § 28-3-103 (2021), while actions for libel "shall be commenced within one (1) year after the cause of action accrued," Tenn. Code Ann. § 28-3-104 (2021).

Here, Plaintiff does not specify in the Complaint the type of defamation it alleges Defendant committed.[2] Plaintiff claims at various points in the Complaint that Defendant:

---

[2] Plaintiff states in response to Defendant's Motion to Dismiss that the Complaint alleges both written and oral defamation. (ECF No. 12 at PageID 113.) In support, Plaintiff refers the

(1) "made false representations, and misleading representations to customers and employees that [Plaintiff] was somehow overcharging for services . . . ," (ECF No. 1-1 at PageID 7);

(2) "voiced dissatisfaction with the price quoted by [Plaintiff] and [] went around the Plaintiff to Jan Pro . . . ," (*id.* at PageID 10);

(3) "directed" "statements" against Plaintiff to Plaintiff's business relations, (*id.* at PageID 12);

(4) "communicat[ed] defamatory statements and misrepresentations or misleading representations about [Plaintiff's] pricing practices, by telling employees and customers that its owners were charging too much money for services that were incompatible with the Jan Pro agreement," (*id.*);

(5) "communicat[ed] defamatory statements and misrepresentations or misleading representations about [Plaintiff's] pricing policies and ability to provide services to companies like [Defendant]," (*id.* at PageID 14);

(6) made defamatory statements "that [Plaintiff's] pricing strategies were improper and unauthorized by Jan Pro; that the Plaintiff could not provide adequate services to [Defendant]," (*id.* at PageID 15); and

(7) "Defendant are [sic] liable for each and every publication of those false statements since the date Defendant began this defamatory smear campaign. The publications of these defamatory statements are plenary and pervasive throughout the Mid-South commercial janitorial market." (*Id.* at PageID 15.)

---

Court to emails between Defendant and Jan Pro supposedly attached to the Complaint as "Exhibit B." (*Id.*) There is no such attachment, however.

In the Court's view, the most natural reading of these allegations suggests that Defendant's communications were oral in nature. Further, the Complaint lacks any reference to written material from Defendant. Nonetheless, the Court must read the Complaint in the light most favorable to Plaintiff, and it is not unreasonable to use language typically attributable to verbal communication within the context of email traffic.

Accordingly, the Court construes the Complaint to allege libel, meaning Plaintiff had one year from the time the cause of action accrued in which to file suit. *See* Tenn. Code Ann. 28-3-104 (2021). Based on the information in the Complaint, Defendant's alleged defamatory statements would have occurred after Plaintiff completed the more thorough cleaning on December 27, 2021, since Plaintiff alleges that this dispute arose after the completion of that service. (ECF No. 1-1 at PageID 10.) Plaintiff thus had until at least December 27, 2022 in which to make a claim for libel and he filed this lawsuit on December 23, 2022. (*See* ECF No. 1.) Therefore, although Plaintiff's claim for slander could be time-barred, the Court does not find that Plaintiff's claim for libel is time-barred.

B.   **Factual Allegations**

Regardless, Plaintiff's defamation claim must fail because the Complaint does not provide sufficient facts to make a plausible claim of libel. To make a claim for defamation, Plaintiff must show that "(1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Davis v. Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) (citing *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999)). "For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation." *Tidwell v. Holston Methodist Fed. Credit Union*, No. E2019-01111-COA-R3-CV,

2020 Tenn. App. LEXIS 291, at *11 (Tenn. Ct. App. June 25, 2020) (quoting *Davis v. Covenant Presbyterian Church of Nashville*, No. M2014-02400-COA-R9-CV, 2015 Tenn. App. LEXIS 804, at *3 (Tenn. Ct. App. Sept. 30, 2015)).

"Libel does not arise 'simply because the subject of a publication finds the publication annoying, offensive or embarrassing. The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule. They must carry with them an element of disgrace." *Id.* (quoting *Davis*, 2015 Tenn. App. LEXIS, at *3). In determining whether a communication is "reasonably capable of such a meaning, the courts must look to the words themselves and are not bound by the plaintiff's interpretation of them. If the words do not reasonably have the meaning the plaintiff ascribes to them, the court must disregard the latter interpretation." *Stone River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983) (citing *Dupont Eng'g Co. v. Nashville Banner Publ'g Co.*, 12 F.2d 186 (M.D. Tenn 1925)). Contrary to Plaintiff's representation, "whether a statement 'is capable of conveying a defamatory meaning is a question of law.'" *Finney v. Jefferson*, No. M2019-00326-COA-R3-CV, 2020 Tenn. App. LEXIS 428, at *7 (Tenn. Ct. App. Sept. 23, 2020) (quoting *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000)). "Whether a statement 'was, in fact, understood by readers in its defamatory sense is ultimately a question for the jury." *Id.* (quoting *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978)).

There are multiple reasons Plaintiff's defamation claim must fail. First, Plaintiff may not proceed on her claim as it relates to unidentified third parties. The Complaint alleges that Defendant made defamatory statements about Plaintiff to Plaintiff's "prospective customers, manufacturers, suppliers, contractors, and with its own employees" and that Defendant's statements "caused customers, employees, vendors, and others in the Mid-South commercial

janitorial community to question [Plaintiff's] pricing structure in the market and deterred some in the janitorial community from associating with and/or doing business with [Plaintiff]."  (ECF No. 1-1 at PageID 12, 15.)  Given this lack of specificity, Plaintiff has not plausibly plead the elements of publication and damage to reputation necessary to succeed on a claim of defamation.  *See Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, (Tenn. Ct. App. 2012) (quoting W. Page Keeton, *Prosser and Keeton on Torts* § 112, p. 798) ("It is well established that the identity of third persons to whom the allegedly defamatory statements were made or read must be pleaded with specificity.").

That leaves Defendant's alleged statements to Jan Pro.  Plaintiff does not, however, identify the exact statements Defendant made to Jan Pro about Plaintiff.  It is thus impossible for this Court to "parse the language of [Defendant's] statement very closely," which is typically how courts assess a statement's defamatory nature.  *Brown*, 393 S.W.3d at 709 (quoting *Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 Tenn. App. LEXIS 826, at *3 (Tenn. Ct. App. Dec. 29, 2006)). What Plaintiff does claim, however, is that Defendant made defamatory statements indicating Plaintiff was (1) using improper pricing practices and (2) providing inadequate services. According to the Complaint, the context for these allegations involved a dispute over the price Defendant would pay for a service Plaintiff had already provided, with Plaintiff and Defendant eventually negotiating a roughly 10% discount off the originally quoted price.  (*See* ECF No. 1-1 at PageID 10.)  Nothing in this context or the Complaint suggests that the alleged statements about Plaintiff's pricing or services, even if false, were sufficiently defamatory to "hold[] the plaintiff up to public hatred, contempt or ridicule" or to "carry with them an element of disgrace."  *See Tidwell*, 2020 Tenn. App. LEXIS 291, at *11.  At most, the Complaint describes Defendant as expressing dissatisfaction with Plaintiff's services and pricing in a manner Plaintiff finds annoying and which Plaintiff would prefer Defendant not to mention.

8

For all these reasons, Defendant's Motion to Dismiss Plaintiff's defamation claim is **GRANTED**.

## II. <u>Tortious and Intentional Interference with Business Relations and Prospective Business Relations</u>

The Complaint generally alleges that Defendant had knowledge of Plaintiff's business relationships and took action to damage them. (ECF No. 1 at PageID 12–13.) Defendant argues that this claim should be dismissed because the allegations in this Count are merely conclusory and "because Plaintiff does not plead intent and improper motive as to [Defendant]." (ECF No. 9 at PageID 35.) Plaintiff responds that it is enough that the Complaint alleges that Defendant had a relationship with Plaintiff, knew of Plaintiff's business relationships, and used that knowledge to its own benefit. (ECF No. 12 at PageID 110.)

Here, Plaintiff has not plead "sufficient factual matter" to raise a plausible claim of intentional interference with business relations. In Tennessee, the elements of the tort of intentional interference with business relationships are as follows:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citations omitted). The Court in *Trau-Med* also provided guidance on what constitutes "improper motive," clarifying that that element requires the plaintiff to "demonstrate that the defendant's predominant purpose was to injure the plaintiff." *Id.* at 701 n.5 (citing *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307–08 (Utah 1982)). As for the means, the Court provided a non-exhaustive list of improper methods of interference, including illegal or tortious conduct such as "violence, threats or

9

intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession or otherwise involve unethical conduct . . . ." *Id.* (citations omitted).

Here, the Court again notes that while Plaintiff claims Defendant knew about and interfered with a number of its relationships, the only third party referenced in the Complaint is Jan Pro. Because Plaintiff must specify both a third party or "identifiable class of third persons" and Defendant's knowledge of those parties to prevail on this claim, it must fail as it pertains to those relationships unspecified in the Complaint. As for Plaintiff's claim that Defendant interfered with Plaintiff's relationship with Jan Pro, Plaintiff alleges that (1) Plaintiff had a business relationship with Jan Pro, (2) Defendant knew about that relationship, (3) Defendant acted with the purpose of harming that relationship, (4) by "communicating defamatory statements and misrepresentations or misleading representations about [Plaintiff's] pricing practices," and (5) Plaintiff suffered damages to its relationship with Jan Pro as a result. (ECF No. 1 at PageID 12–13.)

The Complaint offers only conclusory statements in support of its assertions that Defendant intended to harm Plaintiff's relationship with Jan Pro, acted with improper motive or means, or caused the damage Plaintiff alleges, however. Reading the Complaint in the light most favorable to Plaintiff,[3] it alleges that Defendant tortiously interfered with Plaintiff's relationship with Jan Pro by going behind Plaintiff's back to discuss Plaintiff's December service with Jan Pro, and that

---

[3] In its Response to Defendant's Motion to Dismiss, Plaintiff characterizes Defendant as trying to "have it both ways" by "claim[ing] that Plaintiff fails to sufficiently allege intent and motive while on the other hand arguing that the Plaintiff has stated the formulaic elements of the claim for tortious interference." (ECF No. 12 at PageID 110.) While Plaintiff is correct to point out that a "complaint need not contain detailed factual allegations," it is worth mentioning that "a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

those discussions caused Jan Pro to terminate its relationship with Plaintiff. But there are no facts in the Complaint from which the Court could draw the reasonable inference that Defendant intended for Jan Pro to take that action as a result of its outreach or even prompted Jan Pro to breach or terminate its relationship with Plaintiff. To the contrary, Plaintiff alleges that Defendant "went around the Plaintiff to Jan Pro and tried *to get a discount* on the invoice submitted by [Plaintiff]." (ECF No. 1-1 at PageID 10 (emphasis added).) Elsewhere, Plaintiff describes the content of Defendant's discussions with Jan Pro as "communication about [Plaintiff], the cleaning services and the cost of the last proposal offered to [Defendant] by [] Plaintiff." (*Id.*) By Plaintiff's own words, then, Defendant's intent in going to Jan Pro was to reduce its bill—not to harm Plaintiff's relationship with Jan Pro.

Of course, Plaintiff alleges that, following discussions with Defendant, Mr. Pierami told Plaintiff it should have gotten Jan Pro's approval for its service and pricing first, that Plaintiff should reduce the price for its service to Defendant, and that Jan Pro would sever its relationship with Plaintiff should Defendant sue. (*Id.* at PageID 10–11.) But Mr. Pierami is associated with Jan Pro, and Jan Pro is not a party to this case. Without more to indicate Mr. Pierami took these positions as a result of Defendant's actions, the Court does not have enough to draw even a reasonable inference of causation and accordingly does not find them particularly compelling in the context of Plaintiff's claim against Defendant.

In light of the foregoing, it follows that Plaintiff has also not pled facts sufficient to raise a plausible claim that Defendant acted with improper motive or means. The Complaint lacks facts demonstrating Defendant had a "predominant purpose . . . to injure [Plaintiff]." *Trau-Med*, 71 S.W.3d at 701 n.5. And while the Complaint alleges defamation, misrepresentations, and misleading representations as evidence of improper means, the Court has already rejected

11

Plaintiff's defamation claim and Plaintiff provides such little information about what Defendant allegedly said that the Court can find no basis on which to find Plaintiff has plausibly alleged misrepresentation or misleading representations.

For these reasons, Defendant's Motion to Dismiss this Claim is **GRANTED**.

### III. Tortious and Intentional Interference with Contract Under §47-50-109 and/or Tennessee Common Law

Plaintiff claims that Defendant "tortiously and intentionally interfered with [Plaintiff's] contract with Jan Pro causing the effective cancellation of the [Franchise Agreement]." (ECF No. 1-1 at PageID 14.)[4] Defendant contends that this claim must fail "because Plaintiff does not plead actual breach of the [] Franchise Agreement, nor does Plaintiff allege that [Defendant] had knowledge of that contract." (ECF No. 9 at PageID 35.) Plaintiff responds that it has sufficiently pled this claim.[5]

#### A. Tenn. Code. Ann. § 47-50-109 (2021)

Plaintiff has not pled sufficient facts to raise a plausible claim that Defendant violated Tenn. Code. Ann. § 47-50-109 (2021). That statute makes it "unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or

---

[4] As was the case for Plaintiff's other claims, Plaintiff may not proceed on this claim as it relates to unidentified third parties. (*See* ECF No. 1-1 at PageID 13 (referring to Defendant's interference with Plaintiff's contracts "with its employees, vendors, manufacturers, contractors, and customers").) Indeed, Plaintiff cannot plausibly plead that Defendant knew about or induced the breach of contracts without specifying the contracts with which it allegedly interfered or the parties that entered into them. Accordingly, the Court will consider only those allegations pertaining to Plaintiff's contract with Jan Pro.

[5] Plaintiff responds to Defendant's Motion to Dismiss Count I (Tortious and Intentional Interference with Business Relations) and Count II (Tortious and Intentional Interference with Contract Under § 47-50-109) within the same section without distinguishing her arguments. To the extent Plaintiff also believes it has sufficiently pled this claim because of her recitation of its elements, the Court reiterates its prior position on this issue. *See supra* n. 3.

violation, refusal or failure to perform any lawful contract by any party thereto . . . ." To prevail on such a claim:

> [t]he plaintiff must prove that there was a legal contract, that the wrongdoer had sufficient knowledge of the contract, and she intended to induce its breach. Further, that the wrongdoer acted maliciously, and the contract was, in fact, breached, and the alleged act was the proximate cause of the breach, and damages resulted from that breach.

*HCTec Partners, LLC. v. Crawford*, 676 S.W.3d 619, 641–42 (Tenn. Ct. App. 2022) (quoting *Baker v. Hooper*, 50 S.W.3d 463, 468 (Tenn. Ct. App. 2001)) (alteration in original).

The Court has combed through Plaintiff's Complaint in search of facts sufficient to support Plaintiff's suggestions that Defendant intended to induce Jan Pro to breach the Franchise Agreement, that the contract was breached, or that the alleged conduct was the proximate cause of such breach.[6] The Court has already discussed the plausibility of Plaintiff's claims that Defendant acted with the intent to induce Jan Pro to breach its contract with Defendant and that such actions caused Jan Pro to terminate its relationship with Plaintiff, so will not belabor those points here. *See* discussion *supra* Section II. But in addition to its findings on those issues, the Court finds that Plaintiff has not plausibly pled a breach of the Franchise Agreement. Significantly, Plaintiff did not attach the Franchise Agreement to the Complaint, nor did Plaintiff indicate in the Complaint which provision(s) of that Agreement Jan Pro allegedly breached. And confusingly, Plaintiff

---

[6] Whether Plaintiff has alleged that Defendant had *sufficient* knowledge of the Franchise Agreement is a close call. The only facts in the Complaint to support it are that Defendant went to Jan Pro to negotiate a better price in addition to negotiating directly with Plaintiff, that Jan Pro notified Defendant that Plaintiff was being replaced, and that Defendant was telling others that Plaintiff was acting contrary to the Franchise Agreement. (*See* ECF No. 1-1 at PageID 10, 11.) The Complaint does not indicate when, whether, or how Defendant obtained the Franchise Agreement, however, or explain why Defendant would know the ins and outs of a contract between two other parties. But assuming Plaintiff's allegations are true, as the Court must at this stage, they suggest that Defendant was aware that Plaintiff and Jan Pro had a business arrangement and was making representations to others that Plaintiff was acting in violation of it. Accordingly, the Court elects not to grant Defendant's Motion on this basis.

13

alleged that Defendant's actions resulted in the "effective cancellation" of the Franchise Agreement, which could suggest that it was not technically canceled. (*See* ECF No. 1-1 at PageID 14.) Given such lacking facts, the Court cannot find that Plaintiff has plausibly pled this element of its claim.

For these reasons, Defendant's Motion to Dismiss Plaintiff's claim under Tenn. Code. Ann. § 47-50-109 (2021) is **GRANTED**.

### B. Tennessee Common Law

Plaintiff also alleges that Defendant's interference with the Franchise Agreement violated Tennessee common law. (ECF No. 1-1 at PageID 13.) Tenn. Code Ann. § 47-50-109 "is but a statutory declaration of the common law tort action," though, differing from the common law tort only as to the damages available. *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 542 (Tenn. 1989) (citing *Emmco Ins. Co. v. Beacon Mut. Indem. Co.*, 204 Tenn. 540, 551 (1959)). Defendant's Motion to Dismiss this claim is thus **GRANTED** for the same reasons the Court granted its Motion to Dismiss Plaintiff's claim under Tenn. Code Ann. § 47-50-109.

## IV. Breach of Contract

Finally, Plaintiff brings a breach of contract claim alleging that "Jan Pro breached its exclusive representation contract with [Plaintiff] in the Mid-South, causing damages to [Plaintiff] as a proximate consequence thereof . . . ." (ECF No. 1-1 at PageID 16.) Defendant avers that Plaintiff's breach of contract claim must fail because Defendant cannot breach a contract to which it was never a party. (ECF No. 9 at PageID 36.) Plaintiff responds that it can bring an action against Defendant as an agent of Jan Pro. (ECF No. 12 at PageID 113.)

"A breach of contract claim cannot be asserted against a non-contracting party who has no obligation to perform." *Le Jo Enters. v. Cracker Barrel Old Country Store*, No. M2013-01014-COA-R3-CV, 2013 Tenn. App. LEXIS 753, at *12 (Tenn. Ct. App. Nov. 20, 2013) (citing *Bonham*

14

*Grp. Inc. v. City of Memphis*, No. 02A01-9709-CH-00238, 1999 Tenn. App. LEXIS 237, at *7 (Tenn. Ct. App. Apr. 16, 1999)). It is clear from the Complaint that Plaintiff brings a claim against Defendant based on Jan Pro's alleged breach of Jan Pro's contract with Plaintiff. Further, Plaintiff acknowledges that Defendant is not a party to the Franchise Agreement. (ECF No. 12 at PageID 110.) Therefore, Plaintiff cannot prevail on its breach of contract claim against Defendant based on the Franchise Agreement.

For purposes of completeness, the Court also rejects Plaintiff's argument that it should be able to proceed on its breach of contract claim "as an agent" of Jan Pro. (ECF No. 12 at PageID 113.) To the extent the Court understands it, Plaintiff's reasoning is that Plaintiff can bring a breach of contract claim on Jan Pro's behalf for breach of the Franchise Agreement because Plaintiff is an agent of Jan Pro, and Defendant entered into a Pricing Agreement with Jan Pro. (*See* ECF No. 12 at PageID 113, ECF No. 9-3 at PageID 98.) Plaintiff's only[7] support for this theory is Tenn. Code Ann. § 47-50-109, which generally makes it unlawful to induce another party to breach or violate a lawful contract. The Court has already discussed this statute because it governs Plaintiff's tortious interference with contract claim. Plaintiff's breach of contract claim, however, is separate and, in any event, involves the Franchise Agreement between Plaintiff and Jan Pro— not the Pricing Agreement between Defendant and Jan Pro.

Defendant's Motion to Dismiss Plaintiff's breach of contract claim is **GRANTED**.

---

[7] Plaintiff also cites an Ohio state court opinion for the idea that "[a]s a general rule a non-party may not assert contract rights unless it is a third-party beneficiary under the contract, or such standing is conferred by statute." (ECF No. 12 at PageID 113 (citing *City of Akron v. Castle Aviation, Inc.*, No. 16057, 1993 WL 191966, at *2 (Ohio Ct. App. June 9, 1993)).) The Court does not understand how the quoted language supports Plaintiff's argument and Plaintiff does not elaborate. The Court further notes that Plaintiff cites this language as citing to a 6th Circuit opinion, when in fact the case includes no such citation.

## **CONCLUSION**

For the reasons above, Defendant's Motion to Dismiss (ECF No. 9) is **GRANTED**.

**IT IS SO ORDERED**, this 9th day of February, 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE